[Cite as *Stewart v. Ousley*, 2017-Ohio-8021.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

CURTISS B. STEWART, JR.,

    PLAINTIFF-APPELLEE,               CASE NO 1-17-21

    v.

ONDREA OUSLEY,                    O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Juvenile Division
Trial Court No. 2015 JS 32683

**Judgment Affirmed**

**Date of Decision:   October 2, 2017**

APPEARANCES:

    *F. Stephen Chamberlain* for Appellant

Case No. 1-17-21

**SHAW, J.**

{¶1} Mother-appellant, Ondrea Ousley ("Ousley"), brings this appeal from the April 11, 2017, judgment of the Allen County Common Pleas Court, Juvenile Division, allocating parental rights and responsibilities of the minor child O.S. between Ousley and father-appellee, Curtiss Stewart ("Stewart"). On appeal, Ousley argues that the trial court erred by denying her oral request for a continuance that she made at the final hearing and that the trial court erred by accepting a partial agreement to which she now claims that she did not actually agree.

*Relevant Facts and Procedural History*

{¶2} Ousley had a relationship with Stewart that resulted in the birth of O.S. in January of 2006. Stewart was established as the father of O.S. by the Allen County Child Support Enforcement Agency and the record indicates that Stewart paid child support for O.S.

{¶3} The relationship between Stewart and Ousley ended and Ousley moved to North Carolina to attend college. Meanwhile, Stewart attended college in Columbus. During the time that the two were in college, O.S. stayed with her maternal grandparents. Both Stewart and Ousley visited O.S. while she resided with her maternal grandparents.

{¶4} After Ousley graduated college, she secured a position in her accounting field with a bank in North Carolina. Ousley then indicated that she wanted to relocate O.S. to North Carolina with her.

{¶5} On July 23, 2015, Stewart filed a complaint to allocate parental rights and responsibilities related to O.S., a motion for custody of O.S., and a request for child support. On August 6, 2015, Ousley filed a response.

{¶6} The case proceeded through pretrial litigation and negotiations, resulting in a final hearing being held before a magistrate on October 18, 2016. After negotiations held on the morning of the final hearing, the parties indicated that they had reached an agreement on some of the pending issues, which included, *inter alia*, that Ousley would be named residential parent and legal custodian of O.S., and that Stewart would exercise visitation with O.S. the first weekend of each month in North Carolina.

{¶7} The partial agreement left 6 unresolved issues for the magistrate to determine including such things as when Stewart's summer parenting time with O.S. would begin. The parties seemed to be in agreement that Stewart would get extended summer parenting time with O.S. in Ohio since the distance made it difficult for Stewart to exercise visitation with O.S. more than one weekend per month. Other issues included the amount of phone contact that would be facilitated with O.S., the Spring Break schedule, and child support.

{¶8} At the final hearing, Stewart testified on his own behalf. Ousley testified on her own behalf, and she also called her mother to testify. At the conclusion of the hearing, the matter was submitted to the court for a decision.

{¶9} On December 29, 2016, the magistrate filed a lengthy decision determining all the issues pending in the matter.

{¶10} Ousley filed objections to the magistrate's decision, and later supplemented those objections when permitted by the trial court. The trial court conducted an independent review of the objections and overruled them.

{¶11} On the same date that Ousley's objections to the magistrate's decision were overruled, Ousley had a new attorney file an appearance and request an extension of time to file supplemental objections. The trial court denied that motion.

{¶12} On April 11, 2017, the trial court filed its final judgment entry on the matter determining the parties' parental rights and responsibilities and ordering Stewart to pay child support.

{¶13} It is from this judgment that Ousley appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**The Trial Court below committed error prejudicial to the Defendant/Mother by denying her legitimate request for a continuance of a hearing for parental rights and responsibilities where substantial, creditable [sic] evidence exists that demonstrates a breakdown in the attorney client relationship and clear desire of both client and counsel that counsel be permitted to withdraw.**

**Assignment of Error No. 2**
**The Trial Court below committed error prejudicial to the Defendant/Mother by accepting any agreement, partial or otherwise, where competent and credible evidence exists that the Defendant/Mother did not enter into an agreement voluntarily and with the assistance of counsel.**

*First Assignment of Error*

{¶14} In Ousley's first assignment of error, she argues that it was error to deny her request for a continuance when she expressed at the final hearing that she wanted to hire a new attorney. She contends that she was essentially forced to either proceed without counsel or proceed with an attorney that she did not trust. We disagree with her characterization of what happened at the final hearing, and we find no merit to her argument on appeal.

*Standard of Review*

{¶15} It is well settled that the decision to grant or deny a continuance is within the sound discretion of the court. *State v. Unger*, 67 OhioSt.2d 65 (1981). We will not reverse a decision to deny a continuance absent an abuse of discretion. *Id*. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Notably, the Supreme Court of Ohio has held that " 'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every

-5-

case, particularly in the reasons presented to the trial judge at the time the request is denied.' " *Unger* at 67, citing *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849 (1964).

*Analysis*

**{¶16}** At the final hearing in this case, the parties initially represented to the magistrate that they had reached an agreement on a number of issues, though not all outstanding issues. Ousley's attorney began to recite the parties' partial agreement on the record, which included that Ousley would be designated residential parent and legal custodian of O.S. Then, Ousley's attorney began to recite what he believed was the parties' agreement as to visitation for various holidays, but Ousley indicated that she had a different understanding of the holiday schedule. The court went off the record so that Ousley and her attorney could speak further regarding various issues.

**{¶17}** When court reconvened, the following conversation took place.

**THE COURT: * * * When last we left we were reciting the terms of an alleged agreement but we didn't get very far into what that agreement was during that recess/lunch break, hour long opportunity to talk have we come any closer to an agreement or how do we now wish to proceed?**

**[OUSLEY'S ATTORNEY]: Your Honor, it [is] my understanding that we are not any closer to an agreement, um, and that my client wishes to seek alternate counsel.**

**THE COURT: Ms. Ousley is that accurate?**

**MS. OUSLEY:** That is correct.

**THE COURT:** The matter is set for a final hearing today.

**MS. OUSLEY:** Well, it wouldn't have to be heard today.

**THE COURT:** Well, that's why we set out an entire day for that hearing. The Court gave the parties the opportunity, you and Mr. Stewart and your attorney's [sic] and [the GAL] * * * to try to resolve the matter prior to going to hearing given Mr. Stewart residing in Columbus, you residing in North Carolina, is that correct ma'am?

**MS. OUSLEY:** Yeah, that is correct.

**THE COURT:** The inability to have face-to-face communication and the opportunity for everyone to try and resolve the issue or we could have we could've started the hearing this morning. But, the Court gave you and Mr. Stewart the opportunity to discuss the matters, in hopes that we wouldn't have to have the hearing there would be some meeting of the minds and resolution reached. Unfortunately, that has not yet occurred, so we would be scheduled for a hearing starting this afternoon and continuing until another date and time, whenever we can reconvene if we don't get the hearing done today.

**[OUSLEY'S ATTORNEY]:** I would request, Honor, that this Court grant her a continuance of the Final Hearing today, so she can seek alternate counsel. Uh, Your Honor, I understand the Court's scheduling issues and, and the fact that we did work to resolve this matter this morning. However, if, if when [we] had had [sic] that face-to-face ability to discuss things at Pre-Trial because the parties lived close together the issues that my client would have had with me would have been brought to the forefront much quicker in the process and so I'm asking that the Court consider that and grant her a continuance, uh, to obtain replacement counsel to represent her in this matter.

**THE COURT:** The problem that I have is that this case has [been] filed since July of 2015. It's well over a year old. There

-7-

**are no future orders from the Court by way of interim agreement or temporary orders for the father's continued visitation or parenting time with the child. And, quite frankly I don't know that there will ever be a resolution short of having a hearing in regards to the matter. That's that's [sic] where I'm coming from. I don't know what happened in the hour that we were gone between you and your client \* \* \* or Miss Ousley \*\* \* [and] you[.] \* \* \* I can't force [your attorney] to represent you and if you want to hi, [sic] fire him that's totally up to you. But, prior to taking that recess everybody came in informing the Court that there was at least a tentative agreement except for two (2) in the grand scheme of things minor details that weren't agreed upon. I believe which were summer, the start of the summer parenting time for the father and the amount of notification in case something were to come up for the father's father's [sic] visitations. \* \* \* Everything else had been tentatively agreed upon. Is that not accurate?**

**MS. OUSLEY: It was my understanding that we had different understandings on what the agreement was.**

**THE COURT: Okay.**

**MS. OUSLEY: To begin with, so, no I didn't agree to what thought [sic] was, that was, was what was said in here I thought it was different outside of here.**

**\* \* \***

**THE COURT: Yeah, what, what was the misunderstanding?**

**[OUSLEY'S ATTORNEY]: I believe it had to deal with Spring Break and the other holidays Memorial Day, Labor Day, those sorts of things. I don't want to speak for you but is that correct?**

**THE COURT: And, and I think before we broke, I think [Stewart's attorney] said that Mr. Stewart would not be exercising those holidays.**

[STEWART'S ATTORNEY]: Correct. The understanding was that [Stewart] would be exercising each Spring Break kind of in lieu of those other holidays and that he would exercise a weekend where mother resides, where the child resides the first weekend of every month.

MS. OUSLEY: And, I'm sorry. I wasn't aware of each Spring Break that wasn't in the layout that we had for that. My attorney had agreed upon with me in the other room.

* * *

THE COURT: I, I guess I don't understand what the, what the, what the crux of it was that fell apart.

MS. OUSLEY: Well, the issue was, it was I haven't heard a lot from my attorney.

THE COURT: Um-hum.

MS. OUSLEY: Um, he hasn't really, I feel like he hadn't been getting back with me as far as correspondence wise. So, a lot of me talking to him has just been the day of. I would call, I would email and I would get maybe, uh, a mail response. I wouldn't get a call or an email back. * * * I did come a little earlier to talk to him yesterday, and so, I just kind of feel that, um, he's not properly representing me. I don't feel like he's considering my interest.

THE COURT: Okay.

MS. OUSLEY: Yes.

THE COURT: Um, so you wish to terminate his services at this time?

MS. OUSLEY: Well, would I be able to get a continuance to get a different person?

THE COURT: I haven't made that determination yet.

-9-

**MS. OUSLEY: Oh.**

**THE COURT: My question is do you wish to terminate [your attorney's] representation of yourself?**

**MS. OUSLEY: I wouldn't feel comfortable going into this without a representative.**

**THE COURT: Well the, those are two (2) different questions ma'am. Is, is has there [been] a breakdown in the communication or the relationship to the point where you don't believe you can talk with [your attorney] and he can't represent you in talking with [Stewart's attorney] for a potential resolution or do you wish to see if there's yet a glimmer of hope for a resolution. I don't, I can't read your mind. I can do a lot of things….**

**MS. OUSLEY: (Laughs)**

**THE COURT: …..but I can't read your mind.**

**MS. OUSLEY: Can I talk to him for a second? [Meaning her attorney]**

**THE COURT: Sure, do you want to go off the record and talk to him?**

**MS. OUSLEY: Yes.**

**THE COURT: Okay, let's take yet another recess.**

(Tr. at 10-15).

{¶18} When court reconvened Ousley's attorney indicated that she had authorized him to make a proposal to Stewart regarding some of the outstanding issues. The following exchange then occurred.

-10-

> **THE COURT:  Ms. Ousley is that accurate [that you have authorized your attorney to make a proposal]?**
>
> **MS. OUSLEY:  That's correct.**
>
> **THE COURT:  You wish to keep [your attorney] as your counsel at this time?**
>
> **MS. OUSLEY: Yes, yes.**
>
> **THE COURT:  Okay, it's your decision, correct?**
>
> **MS. OUSLEY:  Yes.**

(Tr. at 16).  The court then went off the record again so the parties could discuss the new proposal that Ousley had authorized her attorney to make.

{¶19} When the court again reconvened, Ousley's attorney indicated that they were prepared to put a partial agreement on the record settling all but 6 issues. That agreement was read into the record.  The court then conducted a colloquy with both Stewart and Ousley asking them if they approved and adopted the agreement, if they understood the agreement, if they had any questions, if they understood that they had a right to a hearing on the agreed issues, if they understood that they were giving up the right to have a hearing on the agreed issues, if there were any threats or promises made to enter the agreement, and if they were entering the agreement voluntarily.  Both parties explicitly and affirmatively indicated that they were entering the agreement voluntarily.  Ousley was specifically addressed by the trial court and she stated that she understood the rights she was giving up and that she

was entering the partial agreement voluntarily. The trial court then approved the partial agreement and proceeded to a hearing on the remaining issues in dispute between the parties.

{¶20} Ousley's attorney represented her throughout the hearing, cross-examining Stewart and examining Ousley and her mother. Ousley never again indicated at the hearing that she wished to discharge her counsel or wanted a further continuance. She did fire her attorney approximately four months later and obtain new counsel, but that was after the magistrate had issued his decision and her counsel had filed objections to the magistrate's decision.

{¶21} On appeal, Ousley now argues that it was error to deny her "request for a continuance" that was made at the final hearing. She contends that the trial court essentially pressured her to go forward without any attorney or go forward with an attorney that she no longer wanted.

{¶22} At the outset, we note that the trial court never affirmatively denied Ousley's request for a continuance because it did not have to since Ousley changed her mind about getting a new attorney. Even assuming that the trial court functionally denied Ousley's initial request for a continuance, a reading of the transcript in its entirety, rather than just an earlier portion of it, makes clear that while Ousley initially indicated that she wanted a new attorney and a continuance, she later changed her mind. The trial court specifically questioned her on whether

she wanted to keep her attorney and Ousley indicated that she was satisfied with her attorney.

{¶23} Ousley similarly never requested a continuance at *any* later point in the hearing, and she did not file any objections to the magistrate denying her request for a continuance at the final hearing. Finally, Ousley could not show any resulting prejudice here, given that her interests were fully represented by counsel at the hearing and she agreed to the vast majority of the issues with Stewart in the partial agreement. It is unclear, at best, how any continuance would have altered the testimony that was presented.

{¶24} For all of these reasons Ousley's first assignment of error is overruled.

*Second Assignment of Error*

{¶25} In Ousley's second assignment of error she contends that the trial court erred by accepting the partial agreement of the parties. Specifically, she contends that the statements she made in court were "under duress" since she had indicated that she did not trust her attorney to represent her interests. We disagree.

{¶26} In reviewing Ousley's argument, we find that the record directly contradicts her contention. Ousley spoke with her attorney and actually made the proposal that was discussed that ultimately turned into the "partial agreement." Then, both parties were engaged in a colloquy by the magistrate to determine whether they understood the partial agreement and agreed to it. Both parties

affirmatively indicated that they were entering into the partial agreement of their own free will. To find duress in these circumstances we would have to explicitly discount the statements of Ousley to the contrary. We see no reason to go to such drastic measures here. Finding no merit to Ousley's second assignment of error, it is overruled.

## *Conclusion*

**{¶27}** For the foregoing reasons Ousley's assignments of error are overruled and the judgment of the Allen County Common Pleas Court, Juvenile Division, is affirmed.

*Judgment Affirmed*

**PRESTON, P.J. and ZIMMERMAN, J., concur.**

**/jlr**